# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES DANIEL DEJARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-721-CG |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Charles Daniel DeJarnett brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 10, hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for DIB on June 6, 2012, alleging disability beginning on June 29, 2012. R. 151-57, 168, 183. Following denial of his applications initially and on reconsideration, a hearing was held before an administrative law judge ("ALJ") on September 23, 2013. R. 24-98, 100-02. In addition to Plaintiff, a

vocational expert testified at the hearing. R. 24-70. The ALJ issued an unfavorable decision on November 27, 2013. R. 8-23.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2012. R. 13. At step two, the ALJ determined that Plaintiff had the severe impairments of: Graves' disease; dyslexia; osteoarthritic pain of the knees, elbows, and neck; hypertension; and obesity. R. 13. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 13-14.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 14-17. The ALJ found that Plaintiff had the RFC to perform "less than the full range of medium work," subject to multiple limitations and restrictions:

> [Plaintiff] can lift or carry up to 50 pounds occasionally and up to 25 pounds frequently. He can push or pull with either the upper or lower extremities consistent with the limitations on lifting and carrying. The claimant can stand or walk 6 hours out of an 8-hour workday. He can sit for 2 hours out of an 8-hour workday or for longer periods if the job does not require a full 6 hours of standing or walking. . . . He can do work involving stooping, kneeling, crouching, crawling, or climbing ropes, ladders, or scaffolds, but only occasionally. Concentrated exposure to extreme heat or cold must be avoided. [Plaintiff] cannot do work that requires him to lie on his back and do overhead reaching. Due to his mental impairments, he is limited to, at most, semi-skilled work with routine supervision.

R. 14. The ALJ determined at step four that Plaintiff was unable to perform his past relevant work as a truck mechanic. R. 17-18.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 18-19. Relying upon the vocational expert's testimony regarding the degree of erosion to the unskilled medium occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform unskilled, medium-exertion occupations such as hand packager, hospital cleaner, and floor cleaner, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 18-19. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 19.

Plaintiff's request for review by the Appeals Council was denied. R. 1-6. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s]

the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, it may not itself reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff raises several challenges to the denial of benefits, including the ALJ's failure to conduct a proper analysis and provide substantial evidence for his step-three finding. *See* Pl.'s Br. (Doc. No. 18) at 1-14; Pl.'s Reply (Doc. No. 25) at 1-7. Because the Court concludes that remand is required by the ALJ's errors at step three, this decision does not address the additional propositions of error, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A. *The ALJ's Step-Three Determination*

At step three, the determination is made whether an impairment or combination of impairments is "equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (alteration and internal quotation marks omitted). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id.* (internal quotation marks omitted). As noted above, the ALJ at step three determined that Plaintiff had no impairment or

4

combination of impairments that met or medically equaled the severity of one of the Listings. R. 13; *see* 20 C.F.R. pt. 404, subpart P app. 1. The ALJ stated that he "considered all Listings," expressly including Listings 9.00(2), 12.02, and 12.05. R. 13-14.

Plaintiff objects that the ALJ erred with respect to Listing 12.05, which outlines the requirements as to Mental Disorders, and specifically challenges the ALJ's determination that Plaintiff does not meet the criteria of Listing 12.05C for Intellectual Disability. *See* Pl.'s Br. at 6-10; Pl.'s Reply at 1-4. "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. pt. 404, subpart P app. 1 § 12.00(A). Under the Listing, if a claimant's impairment satisfies the diagnostic description (the "capsule definition") and any one of the four sets of severity criteria, the claimant is presumptively disabled. *See id.*; *Lax*, 489 F.3d at 1085. Thus, to establish disability under Listing 12.05C, a claimant must show that he or she (i) meets Listing 12.05's capsule definition of "[i]ntellectual disability," i.e., that he or she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that began "before age 22"; (ii) has been assigned a "valid verbal, performance, or full scale IQ of 60 through 70"; and (iii) has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.05, 12.05(C); *Barnes v. Barnhart*, 116 F. App'x 934, 939 (10th Cir. 2004).

Plaintiff argues that the ALJ failed to properly evaluate a verbal testing score received by Plaintiff in February 2013. In support, Plaintiff points to Exhibit 5F, which is a

5

Psychological Report issued by Robert S. Schlottmann, PhD, on February 12, 2013. *See* R. 299-301. In his Psychological Report, Dr. Schlottmann states that he administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test to Plaintiff and that Plaintiff obtained a Verbal Comprehension score of 66, which is "extremely low" and ranks at the 1st percentile—i.e., Plaintiff performed better than one percent or less of other test-takers. R. 299, 300. Dr. Schlottmann also noted that Plaintiff "did rather poorly on [tasks] that required verbal comprehension" and "had difficulty on tasks that required working memory," but "seemed motivated to [do] his best," and that "the results are likely to provide a reliable estimate of his intellectual abilities." R. 299.

Plaintiff first asserts that the ALJ was required to have this WAIS-IV Verbal Comprehension score interpreted and converted to a Verbal IQ score (that can be relied upon for Listing 12.05C purposes) by an agency psychologist. *See* Pl.'s Br. at 6-8 (citing 20 C.F.R. pt. 404, subpart P app. 1 § 12.00(D)). In response, however, the Commissioner allows that Plaintiff's WAIS-IV Verbal Comprehension score of 66 "is equivalent" to the Verbal IQ score contemplated by Listing 12.05C, such that no conversion is required, and expressly concedes that Plaintiff met the Verbal IQ score criterion of Listing 12.05C. Def.'s Br. (Doc. No. 24) at 7 ("Plaintiff had a Verbal IQ of 66 for purposes of the Listing 12.05(C) analysis.") (citing R. 299-300; *Martin v. Commissioner*, No. CIV-12-1130, 2013 WL 4512071, at *2 (D. Md. Aug. 22, 2013)). The Commissioner also concedes that Plaintiff met the third criterion of Listing 12.05C because "the ALJ found that [Plaintiff] had additional severe impairments at step two." *Id.* (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997)); *see* R. 13.

The sole issue, then, is whether Plaintiff met the first Listing 12.05C criterion—i.e., the "deficits in adaptive functioning" capsule definition requirement. Plaintiff argues, "The ALJ did not perform this analysis and did not even acknowledge that the criteria of listing 12.05C were being applied." Pl.'s Reply at 2-4. The Court finds that remand is required on this basis.

In the written decision, the ALJ noted certain of the WAIS-IV test results in assessing Plaintiff's mental impairments at step three: "With regard to concentration, persistence or pace, the claimant had moderate difficulties. He has dyslexia and takes longer to read. His Full Scale IQ is 78 and his verbal comprehension is extremely low." R. 14 (citing Ex. 5F). But with respect to Listing 12.05C, the ALJ stated only, "The undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." R. 14.

Given that Plaintiff undisputedly met two of the three criteria for Listing 12.05C, the ALJ's collective analysis and failure to provide any rationale for his step-three determination require remand of this matter. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks omitted); *see Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that ALJ's "bare conclusion [was] beyond meaningful judicial review" and that ALJ was required to "explain why he found that [the claimant] was not disabled at step three"); *cf. Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (noting that ALJ's rejection of medical evidence is inadequate where the court must

7

speculate as to the basis for rejection).

In particular, the ALJ's discussion leaves it unclear whether the ALJ considered Plaintiff's ability to meet the "deficits in adaptive functioning initially manifested during the developmental period" portion of the capsule definition or, if he did, whether he applied a proper standard to this aspect of Listing 12.05C. Listing 12.05's capsule definition requires a claimant to establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that began "before age 22," but, as noted by Plaintiff, the SSA's rulings do not specifically define the term "deficits in adaptive functioning," *see* Pl.'s Reply at 4, and SSA regulations do not provide express criteria to determine a qualifying type or degree of deficit, *see* 20 C.F.R. pt. 404, subpart P app. 1 § 12.05. In 2002, the SSA stated that the capsule definition for Listing 12.05 is "consistent with, if not identical to, the definitions of MR [i.e., mental retardation] used by" "[t]he four major professional organizations in the United States that deal with MR." *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022 (Apr. 24, 2002).[1] The SSA further stated that its capsule definition "allow[s] use of any of the measurement methods recognized and endorsed by the professional organizations"[2] in determining

---

[1] On August 1, 2013, the SSA announced a final rule to replace the term "mental retardation" with "intellectual disability" in the Listings. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,499 (Aug. 1, 2013). The change in terminology did not substantively alter the Listings. *See id.* at 46,501. In this Opinion and Order, the Court adheres to the preference for the term "intellectual disability" unless quoting a document that itself uses the term "mental retardation."

[2] In discussing intellectual disability, the American Psychiatric Association states, "Deficits in adaptive functioning . . . refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of

eligibility for disability benefits. *Id*. The Tenth Circuit in an unpublished decision has ordered remand where the ALJ "essentially improvised his own definition for 'deficits in adaptive functioning.'" *Barnes*, 116 F. App'x at 942-43. The *Barnes* court directed that, upon remand, "the ALJ must choose a standard consistent with the Commissioner's directive," such as one of the definitions provided by the four professional organizations. *Id*. at 942. Other courts, leaving undecided the question of which definition must be used, have held that for there to be meaningful review the ALJ must at least articulate the standard that was employed. *See*, *e.g.*, *Miller v. Astrue*, No. CIV-07-2611, 2008 WL 8053474, at *8 (S.D. Tex. Sept. 7, 2008) ("While the SSA endorsed the use of any of the four professional organizations' standards, it did not explicitly adopt any one of those standards, and is not entirely clear whether the SSA meant to limit the ALJ to the use of those standards alone. What is clear, however, is that some standard must be used in order for judicial review to be possible."). Under any of these authorities, the ALJ's bare conclusion that "the evidence fails to establish the presence of" Listing 12.05C's criteria is not sufficiently clear that the Court may undertake review without engaging in impermissible fact-finding and speculation.

The Commissioner asserts that the ALJ's determination should be upheld due to a lack of evidence that Plaintiff meets the capsule definition in Listing 12.05. *See* Def.'s

---

similar age and socioeconomic background." *Diagnostic and Statistical Manual of Mental Disorders* 37 (5th ed. 2013). Plaintiff relies on the preceding edition of this guide and argues, similarly, "[A] person meets the criteria described by the DSM-IV-TR for significant limitations if the person has deficits in two (2) of eleven (11) functional areas," including "communication," "work," or "social/interpersonal skills." Pl.'s Reply at 3-4 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000)).

9

Br. at 7-9. The Tenth Circuit has rejected the same proposition in a previous case, stating: "The Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the case." *Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006) (citing *Clifton*, 79 F.3d at 1009-10). "[I]f [Plaintiff] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *See id.*; *cf. Lax*, 489 F.3d at 1086-89 (upholding the ALJ's determination that the claimant did not meet Listing 12.05B where the ALJ had expressly found that the relevant IQ score was not valid and had explained his reasoning). Moreover, the record contains evidence that Plaintiff suffers at least *some* amount of deficit in areas of adaptive functioning. *See, e.g.*, R. 47 (Plaintiff's attorney explaining that Plaintiff would not have qualified as a supervisor at his previous workplace because of dyslexia), 205 (Plaintiff reporting that he had problems filing out reports, spelling, and dealing with coworkers who made him feel "dumb"), 210 (Plaintiff reporting that he cannot follow written instructions well), 299 (Plaintiff reporting to examining psychologist that he "barely made it" through school), 299 (examining psychologist opining that Plaintiff "had difficulty on tasks that required working memory" and performed "rather poorly" on tasks requiring verbal comprehension).

In sum, because the Court cannot determine whether the ALJ's step-three conclusion was premised upon application of a proper legal standard with respect to the capsule-definition criteria, and cannot conclude that the underlying factual findings are supported by substantial evidence, remand is required unless the ALJ's errors are harmless. *See Peck*, 214 F. App'x at 736; R. 13-14; *cf. Haga v. Astrue*, 482 F.3d 1205,

1207-08 (10th Cir. 2007) (noting that where an ALJ "did not provide" the Commissioner's proffered explanations, the court "may not create or adopt" such "post-hoc rationalizations to support the ALJ's decision").

   *B. Harmless Error*

The ALJ's failure to properly evaluate Plaintiff's alleged intellectual disability at step three cannot be excused as harmless, as there are no "'confirmed or unchallenged findings made elsewhere in the ALJ's decision'" that "'conclusively negate the possibility'" that Plaintiff can meet Listing 12.05C. *Murdock v. Astrue*, 458 F. App'x 702, 703-04 (10th Cir. 2012) (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734, 735 (10th Cir. 2005)) (noting that if findings elsewhere in ALJ's decision "conclusively preclude [a claimant's] qualification under the listings at step three such that no reasonable factfinder could conclude otherwise, then any step three error is harmless" (internal quotation marks omitted)). To the contrary, the ALJ elsewhere in the decision noted Plaintiff's "extremely low Verbal Comprehension score," as well as testimony and other evidence reflecting Plaintiff's difficulty keeping up at work. *See* R. 15, 16, 17. Further, the ALJ rejected a state agency reviewing physician's opinion that Plaintiff had no medically determinable mental impairment. *See* R. 13 (finding that Plaintiff has the severe mental impairment of dyslexia), 14 (assessing RFC that includes limitation due to "mental impairments"), 17 (assigning the state agency physician's opinion "little weight" because the opinion "does not recognize the cognitive limits found by" Dr. Schlottmann), 88; *cf.* R. 66 (including unspecified mental impairments in the relevant hypothetical inquiry presented to the vocational expert).

For all of these reasons, the Court is unable to find that the ALJ's findings at steps

four and five render his step-three errors harmless by "provid[ing] a proper basis for upholding [the] step three conclusion that [Plaintiff's] impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733; *accord Murdock*, 458 F. App'x at 704, 705; *Henderson v. Astrue*, 383 F. App'x 700, 702 (10th Cir. 2010).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 19th day of September, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE